UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Case No. 4:18-cv-04020 |
| | § | Case No. 4:18-cv-04032 |
| JAGMAIL S. GILL, ET AL. | § | (Consolidated) |
| Defendants. | § | |

## <u>OPPOSITION TO UNITED STATES MOTION TO APPOINT REPRESENTATIVE</u>

Pursuant to Fed. R. Civ. P. 25(a)(1), substitution of a party is only appropriate if "the claim is not extinguished" by the death of the defendant. Fed. R. Civ. P. 25(a)(1).  The United States' motion to appoint a representative fails to properly address this threshold issue. As outlined below, the claims against defendant Jagmail S. Gill do not survive death and substitution under Rule 25 is unnecessary.

### INTRODUCTION AND BACKGROUND

Mr. Gill died on April 2, 2020, suspected from COVID-19.  On April 28, 2020 a letter was sent to the United States asserting that the FBAR penalty didn't survive death, as part of discussions to resolve the outstanding claim. A copy of the letter is attached to this opposition as **Exhibit 1**.[1] The United States rejected the proposed settlement offer and, instead, filed a suggestion of death with the court and the current motion to appoint a representative before a formal opening of the estate. (Dkts. 22, 23.) Mr. Gill's death, during the  COVID-19 pandemic, has caused a delay in expeditiously opening his estate in the United States and officially

---

[1] Portions of **Exhibit 1** are redacted and the attachment of the previous settlement letter is excluded to protect confidentiality pursuant to Fed. R. Civ. P. 408.

appointing an executor. The United States was informed of these delays and was asked to hold off on seeking any appointment of a representative until the estate could be officially opened. Instead, the United States filed a motion to appoint a representative addressing the requirement that the claim survive death with a single sentence and citation to non-binding cases in Florida. (*See* Dkt. #23 at page 2.) This single sentence does not establish that the FBAR penalty claims asserted by the United States survive the death of Mr. Gill. The substitution sought the by United States, pursuant to Fed. R. Civ. P. 25, is only allowed if "the claim is not extinguished."

As background, Mr. Gill was born in India and resided in the United Kingdom until his passing on April 2, 2020.  Amarjit Gill (Mrs. Gill) was also born in India and lived in the United Kingdom since 1960 when she moved from India to marry Mr. Gill. Both Mr. and Mrs. Gill (the "Taxpayers") were aware of and filed U.S. Individual Income Tax Returns (Forms 1040 and 1040-A) for the years 2005 through 2010.  In preparing these returns, the Taxpayers' sought the assistance of two CPAs – their son, Jagjit Gill ("Jag") and Marc Graye ("Graye").[2] Although both Jag and Graye were aware that the Taxpayers lived abroad and had foreign assets they also believed that only U.S. sourced income (that derived from inside the United States) needed to be reported on the income tax returns. When the need to report worldwide income was discovered, the Taxpayers voluntarily entered into the Internal Revenue Service's ("IRS") 2011 Offshore Voluntary Disclosure Initiative ("OVDI") and amended and filed the income tax returns and the necessary FBARs.[3] Taxpayers voluntarily paid their adjusted outstanding tax liability, as asserted by the IRS, despite questions about the accuracy of the asserted amount.  Disagreement with the

---

[2] Jag prepared the Taxpayers' income tax returns for 2005-2009 and Graye prepared the income tax return for 2010. Graye is currently deceased.

[3] Taxpayers amended joint income tax returns were filed on Forms 1040X when they should have been Forms 1040NR attaching Forms 8833 to claim the treaty benefits.  These returns were prepared by Pannell Kerr Forster of Texas, P.C.

automatic amount of FBAR penalties assessed through OVDI caused the Taxpayers – like many during this time – to withdraw from OVDI. As a consequence, the IRS conducted a full FBAR examination of Taxpayers, the result of which ended in an assessment of non-willful FBAR penalties against the Taxpayers individually.

Once the Taxpayers discussed the assessment with suitable legal counsel, they attempted to file a post-assessment appeal of the FBAR penalties according to rights outlined in IRS correspondence sent to the Taxpayers and the IRS' Internal Revenue Manual.  Unfortunately, these attempts were unsuccessful, and the IRS did not provide the promised right to a post-assessment administrative appeal. The Taxpayer Advocate Service ("TAS") also planned to issue a Taxpayer Assistance Order but referral was made to the U.S. Department of Justice before such assistance could be provided. As a result, the United States filed suits against both Mr. and Mrs. Gill to reduce the FBAR penalties to judgment and collect on such judgments.

## ARGUMENT

Pursuant to Fed. R. Civ. P. 25, when a party dies the court may order substitution if the claim is not extinguished at death.[4] Therefore, before substitution is appropriate the court must determine if the FBAR penalties asserted against Mr. Gill survive his death.

The Supreme Court has held that an action against a deceased party cannot continue unless it "is one that survives by law."[5]  Since Congress has not specifically expressed its intention on whether FBAR penalties survive death, the court must rely on federal common law.[6] The Fifth Circuit has held that survivability of federal statutes turn on whether the "primary purpose" is

---

[4] Fed. R. Civ. P. 25(a)(1).
[5] *Ex parte Schreiber*, 110 U.S. 76, 80 (1884).
[6] *James v. Home Const. Co. of Mobile, Inc.*, 621 F.2d 727, 729 (5th Cir. 1980).

remedial or penal.[7] Both the Supreme Court and the Fifth Circuit agree that a penal statute involves a redress sought for a wrong against the state or public with the purpose of punishment and deterrence.[8]

The Fifth Circuit considers a statute remedial if it redresses individual wrongs, the recovery runs to the harmed individual, and the statutory recovery is proportional to the harm suffered.[9] In contrast, a statute is penal if its primary purpose is redress and deterrence of general wrongs to the public, the recovery runs to the public, and the recovery is wholly disproportionate to the actual harm suffered.[10] Application of these factors to the FBAR penalty, as discussed below, shows that the primary purpose of the statute is penal and therefore does not survive death.

A. ***The primary purpose of the FBAR penalty is to redress and deter general wrongs to the public and not individual wrongs***.

Several courts acknowledge that federal statutes often have both a penal and remedial purpose.[11] The relevant question is not if there is "any" remedial purpose served but what is the *primary purpose* served through a statute.[12] More specifically, the Supreme Court has held that even if the action serves some remedial purpose, as long as there is also a retributive or deterrent purpose – it is punitive.[13] According to the government's own Internal Revenue Manual the

---

[7] *See In re Wood*, 643 F.2d 188, 192 (5th Cir. 1980)(citing *Schreiber*, 110 U.S. at 80); *James*, 621 F.2d at 730(citing *Schreiber*); *see also, Malvino v. Delluniversita*, 840 F.3d 223, 229 (5th Cir. 2016).

[8] *See Kokesh v. Securities Exchange Comm'n*, 137 S. Ct. 1635, 1642 (2017)(quoting *Huntington v. Attrill*, 146 U.S. 657, 668 (1892) that penal laws are offenses "against the State" for the purpose of punishment and deterrence "as opposed to compensating a victim for his loss"); *In re Wood*, 643 F.2d at 229(quoting *Huntington*).

[9] *Malvino*, 840 F.3d at 229 (quoting *Murphy v. Household Fin. Corp.*, 560 F.2d 206, 209 (6th Cir. 1977)); *James*, 621 F.2d at 730.

[10] *Id*.

[11] *See e.g. Irvin-Jones v. Equifax Information Services LLC*, 2019 WL 4394684, *15 (S.D. Tex. 2019).

[12] *In re Wood*, 643 F.2d 188 (5th Cir. 1980)(stating that if a claim "does not fall neatly within the common law categories of either a penalty or remedial action" courts should determine the claim's "primary purpose."); *see also, Bradley v. Franklin Collection Servcs. Inc.*, 2012 WL 12895015, at *4–5 (N.D. Ala. Apr. 10, 2012) (conducting survivability analysis and looking to the claim's "primary purpose").

[13] *See United States v. Bajakajian*, 524 U.S. 321 (1998)("unless a civil sanction solely serves remedial purposes, it may be considered punishment"); *See also United States v. Levine*, 905 F. Supp. 1025, 1029 (M.D. Fla. 1995) (citing *United States v. Halper*, 490 U.S. 435, 448 (1989) for proposition that "a civil sanction that cannot fairly be said

4

primary "purpose of the [FBAR] penalty is to promote compliance with FBAR reporting and recordkeeping requirements."[14] Therefore, according to the government, the FBAR serves the common purpose of deterring people from failing to report their foreign accounts. This is in contrast to traditional remedial actions that compensate individuals for a specific harm instead of damages "for a general wrong to the public."[15]

Many of the cases involving the remedial verses penal distinction involve federal statutes other than the FBAR penalty. Counsel has not found a Fifth Circuit case specifically addressing the consequences of death on the FBAR penalty statute. A few district courts, in non-binding circuits, have found the FBAR penalty survives death.[16] However, at least one court has indicated that failure to file an FBAR is "a wrong to the state" resulting in "no injured private party and no pecuniary harm" and assessed "as a punishment" as opposed to "any sort of compensation."[17] This decision acknowledges that the specific attributes of the FBAR penalty favors a penal designation.

The handful of non-binding jurisdictions, allowing FBAR penalties to survive death, apply a standard that completely overlooks the core question of whether the FBAR penalty is  remedial or penal.[18] Specifically, these courts focused on a standard outlined in *U.S. v. Hudson*, that relates to whether a civil penalty was so punitive as to transform it into a criminal penalty, such

---

solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." (emphasis added)).

[14] Internal Revenue Manual 4.26.16.6.4.

[15] *See United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993).

[16] *See e.g., United States v. Estate of Schoenfeld*, 344 F. Supp. 3d 1354 (M.D. Fla. 2018).

[17] *See United States v. Simonelli*, 614 F. Supp. 2d 241, 247 (Dist. Conn. 2008).

[18] *See Estate of Schoenfeld*, 344 F. Supp. 3d 1354 (M.D. Fla. 2018)( using *Hudson v. United States*, 522 U.S. 93 (1997) to determine whether a nominally civil penalty is punitive enough to transform a civil remedy into a criminal penalty); *United States v. Park*, 389 F. Supp. 3d 561 (N.D. Ill. 2019)(applying similar incorrect analysis); *see also*, *United States v. Green*, 2020 WL 1980859, *5 and 7 (S.D. Fla. 2020)(finding the FBAR penalty survives death despite being "the proverbial square peg in the round hole" but acknowledging *Hudson* as persuasive to its decision).

that a criminal prosecution would be barred under double jeopardy principles.[19] Therefore, the non-binding cases are not even persuasive authority because they fail to answer the core question this court must decide as a matter of first impression.

The United States' complaint refers to a civil "penalty" throughout the allegations and in its demand for judgment.[20] Further, as noted above, the Internal Revenue Manual provisions, discussing the non-willful violations at issue, states that the liability is not based on an actual harm caused but instead serves a typical penal purpose – deterrence.[21] This why at least one court has recognized the "FBAR penalty is assessed on Defendant as punishment, not as any sort of compensation for any pecuniary harm."[22]  Therefore, the first factor weighs in favor of finding that the FBAR penalty is penal and is extinguished upon the death of the defendant.

### B. *FBAR penalties provide a recovery to the public and are not individual restitution*.

FBAR penalties are paid to the United States Treasury and not to any individual as any kind of restitution. Section 31 U.S.C. § 5324 requires reporting of certain foreign accounts exceeding $10,000 by filing Form TD F 90-22.1 (commonly known as an "FBAR") regardless of whether it would result in taxes due and owing. As such, the FBAR penalty applies even when every dollar of tax on income in any undisclosed account is paid.  Therefore, the FBAR penalty does not compensate the United States for any harm suffered as a result of the defendant's actions, such as other federal statutes like the False Claims Act ("FCA"), because no harm is required. The

---

[19] *See Hudson v. United States*, 522 U.S. 93, 99 (1997)(holding that "the Double Jeopardy Clause of the Fifth Amendment is not a bar to the later criminal prosecution because the administrative proceedings were civil, not criminal").

[20] Although FBAR penalties are "civil penalties", it is well established that even clearly civil penalties abate upon death. *See, e.g., United States v. Edwards*, 667 F. Supp. 1204, 1215 (W.D. Tenn. 1987)(holding that an EPA Clean Water Act Penalty is a "civil penalty" that abates upon death because it "was intended by Congress as a means to deter people from violating the Act).

[21] *See* Internal Revenue Manual 4.26.16.6.4.

[22] *See Simonelli*, 614 F. Supp. 2d at 247.

FBAR violation merely deprives the Government's Financial Crimes Enforcement Network ("FinCEN") of information it collects in its public capacity.[23]

Any potential harm to the United States is hypothetical or, at best, an indirect claim of general governmental costs, applicable to any penalty, which would make the need for a remedial or penal determination superfluous. Such a result is contrary to the law specifically requiring this analysis in determining which claims abate at death. A remedial finding requires a "direct injury" to the United States or "the action is not for compensation but for the recovery of a penalty, and abates upon death of the defendant."[24] Therefore, the second factor also weighs in favor of finding that the FBAR penalty is penal and is extinguished upon the death of the defendant.

C.      ***FBAR penalties are disproportionate to any alleged harm suffered***.

The third, and final, factor also supports the conclusion that the FBAR penalty abates upon death. The FBAR penalty is not part of the Internal Revenue Code. Rather, it is part of the Bank Secrecy Act. As outlined above, it is not designed to compensate for a direct loss by the United States in terms of lost taxes. Instead, it is designed to incentivize compliance with the FBAR's filing requirements. In 2004, Congress added non-willful penalties and greatly increased the FBAR willful penalty to the greater of $100,000 or 50% of the balance in the account.[25] The IRS's assessment of willful penalties is discretionary and, in several cases, the IRS has exercised

---

[23] Internal Revenue Manual § 4.26.16.6.4 (stating that FBAR penalties "promote compliance with the FBAR reporting and recordkeeping requirements").

[24] *United States v. Price*, 290 F.2d 525, (6th Cir. 1961); *see also, Porter v. Montgomery*, 163 F.2d 211, 215 (3d Cir. 1947)("In order to obtain damages, the loss must flow out of the wrong and be its natural and proximate consequence").

[25] American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418 (codified at 31 U.S.C. § 5321).

this discretion to assess multi-million dollar penalties against taxpayers.[26] The calculation of both willful and non-willful FBAR penalties bears no relationship to the taxes ultimately owed.

The maximum penalty for non-willful violations is $10,000.[27] However, the government's interpretation of non-willful violations can result in large penalties completely disproportionate to any alleged harm. Although the determination of a claim's survivability upon death requires a look to the nature of the statute instead of specific conduct,[28] the Taxpayers' situation provides an example of the absurd disparity that can occur with non-willful FBAR penalties. Mr. and Mrs. Gill are both assessed for failing to file the required FBAR forms for 2005 through 2010 based on their tax advisor's misunderstanding of the law. However, because Mr. Gill is an alleged signatory on more accounts his penalty is $784,608.78 instead of $55,304.55 assessed against Mrs. Gill for missed FBARs from the exact same periods.[29] This disparity results from the discretion given to IRS examiners to assess no penalty, a maximum penalty of $10,000 per year or, instead, penalties for each account per year.[30] A recent decision by the district court for the Eastern District of Texas rejected the government's per-account assessments for non-willful FBAR penalties, like those at issue here.[31] In ruling for the taxpayer, the court noted that

---

[26] *See e.g. United States v. Schwarzbaum*, 2020 WL 1316232, *13 (S.D. Fla. 2020)(noting a $13,729,591 FBAR penalty assessed by the IRS that was improperly calculated by the examiner). The provisions outlining IRS discretion to assess FBAR penalties are contained in Internal Revenue Manual 4.26.16.6.5.

[27] *See* American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 821, 118 Stat. 1418, 1586 (codified at 31 U.S.C. § 5321).

[28] *See In re Wood*, 643 F.2d at 190 ("It has long been established that *causes of action predicated on penal statutes* do not survive the death of the debtor…"(emphasis added)).

[29] Amounts are only calculated through September 1, 2017 and the current amounts owed are likely higher because of interest and any other additions that may be claimed by the United States. (*See* U.S. Compl.)

[30] *See* Internal Revenue Manual 4.26.16.6.4.1 (indicating that "in most cases" examiners will recommend on penalty per open year but can assert a separate penalty for each unreported account).

[31] *See United States v. Bittner*, 2020 WL 3498082 (E.D. Tex. 2020).

adopting the taxpayer's arguments regarding non-willful FBAR penalties avoided "absurd outcomes that Congress could not have intended in drafting the statute."[32]

The FBAR penalties, both willful and non-willful, are calculated without any relationship to the taxes owed and are wholly disproportionate to any conceivable harm caused. Therefore, the third factor also weighs in favor of finding that the FBAR penalty is penal and is extinguished upon the death of the defendant.

## CONCLUSION

For the foregoing reasons, the FBAR penalty claims against Mr. Gill do not survive his death and there is no need for substitution by the United States under Fed. R. Civ. P. 25. Therefore, the United States' motion to appoint a representative should be denied and the claims against Mr. Gill dismissed.

/

/

/

/

/

/

/

/

---

[32] *Bittner*, 2020 WL 3498082, *8 (providing examples where non-willful penalties may be larger than willful penalties if calculated on a per account instead of per FBAR basis).

Dated: July 28, 2020.                     Respectfully Submitted,

                                          **BROWN FOX, PLLC**

                                          By:   *s/Joshua D. Smeltzer*
                                          Joshua D. Smeltzer
                                          joshua@brownfoxlaw.com
                                          Texas Bar No. 24113859
                                          S.D. of Tex. No. 3510579
                                          8111 Preston Road, Suite 300
                                          Dallas, TX 75225
                                          Telephone: (214) 396-5962
                                          Facsimile: (214) 327-5001


                                          **HOLLAND & KNIGHT LLP**

                                          Nicole M. Elliott, Esq.
                                          District of Columbia Bar 1017883
                                          New York Bar 4375622
                                          Admitted *Pro Hac Vice*
                                          Holland & Knight LLP
                                          800 17th Street, N.W., Suite 1100
                                          Washington, DC 20006
                                          Telephone: (202) 469-5144
                                          Facsimile: (202) 955-5564
                                          Email: Nicole.Elliott@hklaw.com


                                          **ATTORNEYS FOR DECEASED
                                          DEFENDANT JAGMAIL S. GILL**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served on this day on counsel identified on the Service List below via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> Herbert W. Linder, Esq.
> Department of Justice
> 717 N. Harwood, Suite 400
> Dallas, Texas 75201
> Telephone: 214.880.9754
> Facsimile: 214.880.9774
> Email: <u>Herbert.W.Linder@usdoj.gov</u>

> */s/ Joshua D. Smeltzer*
> Joshua D. Smeltzer