IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. H-18-4020 |
| | ) | |
| JAGMAIL S. GILL, and | ) | |
| AMARJIT K. Gill, | ) | |
| | ) | |
| Defendant, | ) | |

**UNITED STATES' REPLY IN SUPPORT OF MOTION TO APPOINT AND SUBSTITUTE
A PERSONAL REPRESENTATIVE FOR THE ESTATE OF JAGMAIL S. GILL**

The Plaintiff, United States of America files its reply to the Response (ECF 24) filed by

deceased Defendant, Jagmail S. Gill's former attorneys to the United States' Motion to Appoint

and Substitute a Personal Representative for the Estate of Jagmail S. Gill.[1]

---

[1] The United States has moved to extend the page limit for reply briefs as set forth in Judge
Miller's Court Procedures regarding this its reply to Defendant Jagmail Gill's (deceased)
Response to the United States' Motion to Appoint a Personal Representative for the estate of
Jagmail S. Gill. *See ECF #27.*

## TABLE OF CONTENTS

I.  STATEMENT AND NATURE OF THE CASE AND STAGE OF PROCEEDING....1

II.  STATEMENT OF ISSUES ................................................................................3

III.  SUMMARY OF THE ARGUMENT ...........................................................3

IV.  ARGUMENT ...................................................................................................4

A. Jagmail Gill's death terminated his attorneys authority to act for him .......................4

B. FBAR Penalties Survive Taxpayer's Death ....................................................5

    1. 28 U.S.C. § 2404 ...................................................................................................5

    2. Independent of Section 2404, FBAR Penalties survive because they are remedial.........5

     A. The court opinions determining the FBAR penalties survive are persuasive and well-reasoned....................................................................................................5

    B. The purpose of the civil FBAR penalties is primary remedial and compensates the government for harm................................................................................9

V.  CONCLUSION...........................................................................................13

## <u>TABLE OF AUTHORITIES</u>

### <u>FEDERAL CASES</u>

*Bickham Lincoln-Mercury Inc. v. U.S.*, 168 F.3d 790, 795 (5th Cir. 1999) .................................10

*Cheramie v. Orgeron*, 434 F.2d 721, 725 (5th Cir. 1970) ..............................................4

*Dewees v. United States*, 272 F. Supp. 3d 96, 100-101 (D. D.C. 2017)........................................10

*Estate of Duncan v. Commissioner of Internal Revenue*, 890 F.3d 192, 200 (5th Cir. 2018) ........7

*Helvering v. Mitchell*, 303 U.S. 391, 401 (1938)..........................................................................10

*Hilsabeck v. Lane Company, Inc*., 168 F.R.D. 313, 315 (D. Kan. 1996) ......................................4

*Hudson v. United States*, 522 U.S. 93, 99–100 (1997) ..................................................................6

*In re Wood*,  643 F.2d 188, 190-191 (5th Cir. 1980) ..................................................................6, 9

*In re Wyly*, 552 B.R. 338, 612-13 (N.D. Tex. 2016).....................................................................10

*James v. Home Constr. Co. of Mobile*, 621 F.2d 727, 729 (5th Cir. 1980) ..................................9

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963).......................................................6

*Lee v. C.I.R.*, 227 F.2d 181, 183 (5th Cir. 1956) ........................................................................10

*Malvino v. Delluniversita*, 840 F.3d 223, 229- 230 (5th Cir. 2016) .............................................9

*Marks v. Comm'r,* 947 F.2d 983, 986 n. 1 (D.C.Cir.1991) .............................................................7

*Murphy v. Household Finance Corp*., 560 F.2d 206 (6th Cir.1977) ..............................................6

*Porter v. Montgomery*, 163 F.2d 311 (3d Cir. 1947)..................................................................8, 9

*Reiserer v. United States*, 479 F.3d 1160, 1162–64 (9th Cir. 2007)........................................6, 10

*United States v. Bittner*, No. 4:19-cv-00415, 2020 WL 3498082 (E.D. Tex. June 29, 2020)........2

*United States v. Boyd*, No. 18-cv-803, 2019 WL 1976472 (C.D. Cal. Apr. 23, 2019)...................2

*United States v. Estate of Schoenfeld*, 344 F. Supp.3d 1354, 1370 (M.D. Fla. 2018)... 3, 5, 6, 7,12

*United States v. Garrity*, 304 F. Supp.3d 267 (D. Conn. 2018)................................................4, 12

*United States v. Green*, No.1:19-CV-24026-KMM, 2020 WL 1980859,  (S.D. Fla. Apr. 27, 2020) ................................................................................................................3, 5, 6, 7, 9, 12

*United States v. Green*, 2020 WL 3451543, (S. D. Fla., June 9, 2020) ………………………8, 9

*United States v. Kelley–Hunter,* 281 F. Supp.3d 121, 124 (D.D.C. 2017) ....................................4

*U.S. v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993)....................................................................6

*United States v. Park*, 389 F. Supp. 3d 561, 575 (N.D. Ill. 2019) ...................................3, 5, 6, 7, 8

*United States v. Price*, 290 F.2d 525 (6th Cir. 1961)...................................................................8, 9

*United States v. Schwarzbaum*, Case No. 18-cv-8114, 2020 WL 2526500, at *6-7 (S.D. Fla., 2020) ................................................................................................................................................12

*United States Simonelli*, 614 F. Supp.2d 241 (D. Conn 2008) ......................................................8

## FEDERAL STATUTES

11 U.S.C. § 523(a)(7)......................................................................................................................8

26 U.S.C. § 6700......................................................................................................................6, 10

26 U.S.C. § 6701......................................................................................................................6, 10

26 U.S.C. § 6721...........................................................................................................................10

28 U.S.C.§ 2404.........................................................................................................................4, 5

31 U.S.C. § 5314..................................................................................................................9, 10, 11

31 U.S.C. § 5321...................................................................................................................5, 11

31 U.S.C. § 5321(a)(5).....................................................................................................2, 9, 10, 13

31 U.S.C. § 5321(a)(5)(A)..............................................................................................................11

31 U.S.C. § 5321(a)(5)(B)(i)........................................................................................................1, 2

31 U.S.C. § 5321(a)(5)(C)...............................................................................................................7

31 U.S.C. § 5322(a).........................................................................................................................9

31 U.S.C. § 5322(b).........................................................................................................................9

## **OTHER AUTHORITIES**

American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 821, 118 Stat. 1418, 1586............11

Defense Production Act of 1950, § 409(c), Pub. L. No. 81-774, 64 Stat. 798, 811 (1950).............8

Emergency Price Control Act of 1942, § 205(e), Pub. L. No. 77-421, 56 Stat. 23, 34 ..................8

H.R. Rep. 91-975 (1970) .....................................................................................................10, 11

S. Rep. 108-192 (2003), at 108 ................................................................................................11

USA PATRIOT Act of 2001§ 361(b), at 8 (Apr. 26, 2002) ...........................................................11

U.S.C.C.A.N. 4394, 4398 ..........................................................................................................10

## I.      STATEMENT AND NATURE OF THE CASE AND STAGE OF PROCEEDING

The United States has filed suit against Jagmail Gill and his wife Amarjit Gill to collect unpaid civil penalties under 31 U.S.C. § 5321(a)(5)(B)(i) (hereafter "FBAR penalties"[2]) arising from their failure to report certain foreign bank accounts in which they had an interest or signature authority.  The following is a summary of the United States' allegations and claims against Jagmail Gill.

In 1984, Jagmail Gill became a green card holder and lawfully admitted into the United States for legal residence.  In 2008, Gill became a United States' Citizen.  Jagmail Gill filed Form 1040 U.S. Individual income tax returns for the 2005- 2010 tax years. However, Jagmail Gill failed to report the existence of any foreign accounts on his 2005-2010 tax returns.  Jagmail Gill also failed to report any of his foreign income on his originally filed United States income tax returns for 2005-2010.  Jagmail Gill's unreported income from the foreign bank accounts created income tax deficiencies for each year from 2006 through 2010.  Gill had signature authority, control or authority over, or an interest in foreign bank accounts for as follows:

| Year | Total Number Jagmail Gills' Foreign Accounts | Highest monthly aggregate balance in Jagmail Gill's Foreign Accounts |
|------|------|------|
| 2005 | 15 | $11,952,020 |
| 2006 | 17 | $16,069,880 |
| 2007 | 18 | $18,115,082 |
| 2008 | 22 | $15,137,545 |
| 2009 | 22 | $13,504,776 |
| 2010 | 25 | $ 7,642,055 |

Despite having a legal obligation to file FBARs, Jagmail Gill failed to timely file FBARs for 2005-2010 reporting in his foreign accounts.  The IRS assessed non-willful FBAR penalties

---

[2] Certain foreign accounts are required to be reported on Form TD F 90-22.1, "Report of Foreign Bank and Financial Accounts"

(continued...)

1

against Jagmail Gill for his failure to report the existence of foreign accounts on a per account.

*See* 31 U.S.C. § 5321(a)(5)(B)(i).[3]   Due to Jagmail Gill's non-willful failure to timely file

FBARs reporting his financial interest in the foreign bank accounts, the IRS assessed non-willful

FBAR penalties against him pursuant to 31 U.S.C. § 5321(a)(5) on October 28, 2016, as follows:

| | |
|---|---|
| Tax Year 2005 | $  89,335 |
| Tax Year 2006 | $106,739 |
| Tax Year 2007 | $115,568 |
| Tax Year 2008 | $134,236 |
| Tax Year 2009 | $140,143 |
| Tax Year 2010 | $154,827 |
| **Total** | **$740,848** |

On October 24, 2018, the United States brought separate actions to collect penalties

assessed against defendants Jagmail Gill (18-4020) and his wife, Amarjit Gill (18-4032), for

their failure to report their financial interest in foreign bank accounts for calendar years 2005

through 2010 ("FBAR penalties").  Both Jagmail Gill and Amarjit Gill were personally served

and have filed Answers.  The two cases were consolidated on April 2, 2020, into 18-4020. (ECF

21).  On April 28, 2020, counsel for Jagmail and Amarjit Gill informed the United States by

letter that Jagmail Gill had passed away on April 2, 2020, in the United Kingdom.   On May 14,

2020, the United States filed a suggestion of death of Jagmail Gill under Federal Procedure Rule

25.  After waiting for a personal representative to be appointed by a probate court, on July 8,

2020, the United States filed a Motion to Appoint a Personal Representative for the estate of

Jagmail S. Gill for the limited purpose of defending this suit and to substitute such personal

representative for the now deceased Jagmail Gill  This motion was served on counsel for Amarjit

Gill (who were also formerly counsel for Jagmail Gill).  No response has been filed on behalf of

---

[3] There is conflicting authority on whether the maximum penalty is $10,000 per account violation and or per annual form violation.  *Compare United States v. Boyd*, No. 18-cv-803, 2019 WL 1976472 (C.D. Cal. Apr. 23, 2019)($10,000 per account), *United States v. Bittner*, No. 4:19-cv-00415, 2020 WL 3498082 (E.D. Tex. June 29, 2020)($10,000 per year).

2

Amarjit Gill.  Instead, a response was filed only in the name of the deceased Jagmail Gill by his former attorneys.  See Response at ECF 24.  This Response makes no attempt to address the need for a personal representative raised by the United States' Motion, and instead contains a procedurally improper motion requesting to dismiss the government's claims against Jagmail Gill on the theory that those claims did not survive his death.

## II.    STATEMENT OF ISSUES

A.    Whether Jagmail Gill's death terminated his attorneys' authority to act on his behalf?

B.    Whether the United States' FBAR assessments survive Jagmail Gill's death?

## III.   SUMMARY OF THE ARGUMENT

Jagmail Gill's death terminated any authority his former attorneys may have had to file a pleading in this case on his behalf.  Accordingly, the Response should be stricken or ignored because it was not filed by any person authorized to act on behalf of Jagmail Gill or a yet to be appointed personal representative.

However, as explained more fully below, even if the Court were to consider this unauthorized request for dismissal of its claims against Jagmail Gill, it is clear that those claims survive Jagmail Gill's death because the FBAR penalties at issue are remedial in nature.  All courts that have considered this issue have concluded that FBAR penalties survive death because they are more remedial than punitive. *See United States v. Estate of Schoenfeld*, 344 F. Supp.3d 1354, 1370 (M.D. Fla. 2018); *United States v. Park*, 389 F. Supp.3d 561, 575 (N.D. Ill. 2019), *United States v. Green*, No.1:19-CV-24026-KMM, 2020 WL 1980859, at *7 (S.D. Fla. Apr. 27,

2020).  Similarly, several other district courts have allowed the United States to purse FBAR assessments against the heirs of a non-reporting account holder.  *See United States v. Garrity*, 304 F. Supp.3d 267 (D. Conn. 2018) and *United States v. Kelley–Hunter,* 281 F. Supp.3d 121, 124 (D.D.C. 2017).  Furthermore, 28 U.S.C.§ 2404 also supports the conclusion that the FBAR penalties survive death.  This Court should rule that the FBAR penalties survive death and grant the United States' Motion to appoint and substitute a personal representative for Jagmail Gill.

## IV.    ARGUMENT

### A.    *Jagmail Gill's death terminated his attorneys authority to act for him*

Jagmail Gill's death terminated his attorneys' authority to act on his behalf including filing essentially a motion to dismiss the United States' Complaint against Jagmail Gill.  An individual's death terminates the attorney's authority to act for him.  *See Cheramie v. Orgeron*, 434 F.2d 721, 725 (5th Cir. 1970) (citing Restatement (Second) of Agency, § 120 (1958)).  An attorney-client relationship is one of agency and terminates upon death such that there is no authority for a counsel to file motions to dismiss.  *See Hilsabeck v. Lane Company, Inc*., 168 F.R.D. 313, 315 (D. Kan. 1996).   In the present case, after service of process was completed on both defendants, the defendants' answered, and then Jagmail Gill passed away.  Thus, Jagmail Gill's attorneys lost their authority to act on his behalf at his death.  Accordingly, the Response should be stricken or ignored because it was not filed by any person authorized to act on behalf of Jagmail Gill or a yet to be appointed personal representative; and the Court should grant the United States' Motion to appoint a personal representative for the limited purpose of defending this case.  If a personal representative has been appointed for Jagmail Gill and authorized the former attorneys to file this pleading, that representative should be disclosed to the United States and this Court.

4

**B.      FBAR Penalties Survive Taxpayer's Death**

*1.      28 U.S.C. § 2404*

The United States' claims against Jagmail Gill in this case survive his death by operation

of federal statute.  Unlike the taxpayers in *Estate of Schoenfeld*, (denying use of Section 2404 to

pursue claim against a decedent's estate when suit had not been filed until after death) *Park* and

*Green*, the United States brought this case against Jagmail Gill prior to his death and thus 28

U.S.C. § 2404 preserves the United States' claims.  Section 2404 provides that a "civil action for

damages commenced by or on behalf of the United States or in which it is interested shall not

abate on the death of a defendant but shall survive against his estate as well as against surviving

defendants."  The United States filed this suit against Jagmail Gill on October 24, 2018.  On

January 3, 2020, the United States perfected service against Jagmail Gill.  On April 2, 2020,

Jagmail Gill passed away.  Thus, United States brought this suit against Gill prior to his death.

This is a civil action to collect amounts owed to the United State that were assessed under 31

U.S.C. § 5321.  The civil FBAR penalties are damages within the meaning of the statute because

they are remedial in nature.

*2.      Independent of Section 2404, FBAR Penalties survive because they are remedial*

*A.      The court opinions determining the FBAR penalties survive are persuasive and well-reasoned.*

Even if Section 2404 were not applicable, the United States' claims against Jagmail Gill

would still survive.  No court considering the matter has determined that the primary purpose of

the civil FBAR penalties under 31 U.S.C. § 5321 is solely penal.  *See United States v. Estate of*

*Schoenfeld*, 344 F. Supp.3d 1354 at 1370; *United States v. Park*, 389 F. Supp. 3d at 575, *United*

*States v. Green*, 2020 WL 1980859, at *7.   Instead, all three of these courts determined that the

FBAR penalties are primarily remedial and survive the death of the taxpayer/account holder.

Here, the Response asks this Court to ignore the three district court cases addressing survivability of FBAR penalties, ignore the analysis under the Supreme Court cases and ignore that the United States is the harmed party in this case.  The focus in the Response on the three-factor test is misplaced as it is not on point in cases involving the United States.  The three-factor analysis set up in *In re Wood*,  643 F.2d 188, 190-191 (5th Cir. 1980) is not applicable in this case because the government is the harmed party.  The three-factor test looks to see whether the wrongs were to an individual or the public and whether the recovery runs to an individual or the public. *See In re Wood* F.2d at 191.  In a case involving the United States, this factor would always run against the government.  Thus, the three-factor test is simply not applicable or on point because it is the government itself that has been harmed. *See United States v. Green* 2020 WL 1980859, at \*4 (Court determined the three-factor test set forth in *U.S. v. NEC Corp*., 11 F.3d 136, 137 (11th Cir. 1993) and adopted from *In Re Wood* not applicable).

Instead, the courts in *Estate of Schoenfeld* and *Green* found the analysis in *Hudson v. United States*, 522 U.S. 93, 99–100 (1997) and the factors from *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963), "helpful because the analysis may be implemented to provide a robust examination as to whether a penalty is remedial or penal in nature." *United States v. Green,* 2020 WL 1980859 at \*5; *Estate of Schoenfeld*, 344 F. Supp.3d at 1370.  In addition, the Ninth Circuit Court of appeals applied the *Kennedy* factors to determine that the penalties for promoting abusive tax shelters under 26 U.S.C. §§ 6700 and 6701 survived the attorney's death who the penalties were assessed against. *Reiserer v. United States*, 479 F.3d 1160, 1162–64 (9th Cir. 2007).  The court in *Reiserer* also rejected the 3-factor test used *In Re Wood*.[4]

---

[4] The court in *In re Wood* agreed with the test used in *Murphy v. Household Finance Corp*., 560 F.2d 206 (6th Cir.1977). *See Matter of Wood*, 643 F.2d 188 (5th Cir. 1980).

(continued...)

6

The court in *United States v. Green* specifically analyzed in detail whether the FBAR penalties were remedial versus solely penal in nature.   The court determined that FBAR penalties are "primarily remedial with incidental penal effects" and held that "the FBAR penalties pursuant to § 5321(a)(5)(C) survive" a taxpayer's death. *United States v. Green*, 2020 WL 1980859 at \*7.  The court in *United States v. Schoenfeld* also conducted an in-depth analysis to determine that the FBAR penalties were more remedial than penal to reach its holding that the FBAR penalties survived death of the accountholder.  *United States v. Estate of Schoenfeld*, 344 F. Supp.3d at 1370-1375.  Likewise, the court in *United States v. Park*, found the analysis in *Schoenfeld* persuasive that the FBAR penalty assessments were more remedial to held that the FBAR penalties survived death. *United States v. Park*, 389 F. Supp.3d at 575.

However, the Response asks this Court to ignore these well-reasoned cases that addressed the exact issue of FBAR penalties surviving the death of the taxpayer and instead rely on non-binding and non-legal internal agency guidance and one inapplicable bankruptcy case.  The Response's reliance on the Internal Revenue Manual ("IRM") for the determination of FBAR penalties purpose fails as the IRM is not law.  The IRM contains internal operating procedures for the IRS and is not legally binding and "do[es] not create rights in the taxpayer." *Estate of Duncan v. Commissioner of Internal Revenue*, 890 F.3d 192, 200 (5th Cir. 2018); *Marks v. Comm'r,* 947 F.2d 983, 986 n. 1 (D.C.Cir.1991) (holding that it is well-settled that the IRM provisions are directory rather than mandatory, are not codified regulations, and clearly do not have the force and effect of law).

Likewise, the Response's reliance on *United States Simonelli*, 614 F. Supp.2d 241 (D. Conn 2008) is unpersuasive because the bankruptcy court was not analyzing FBAR penalties to determine whether they were primarily remedial in nature and survived death.  Rather the court in *Simonelli* was specifically determining how the FBAR penalties fit within the Bankruptcy Code provisions on dischargeability.  The issue was whether an FBAR penalty was a "penalty" for purposes of 11 U.S.C. § 523(a)(7) or was a "tax penalty" subject to being a discharged debt. *Simonelli*, 614 F. Supp.2d at 244.

The Response's reliance on *United States v. Price*, 290 F.2d 525 (6th Cir. 1961), and *Porter v. Montgomery*, 163 F.2d 311 (3d Cir. 1947) is also misplaced as these cases are distinguishable.  The statutes from *Price* and *Porter* are nothing like the statutes in the Bank Secrecy Act that are at issue here. In *Price* and *Porter*, the United States did not suffer monetary harm as a result of the defendants' conduct. Indeed, the defendants' conduct had little to do with the United States.  *Price* and *Porter* were both suits against sellers who exceeded ceilings set in price control regulations. *Price*, 290 F.2d at 525-26; *Porter*, 163 F.2d at 212.  By statute, the buyers of the products were given the primary remedy of a suit against the sellers to recover treble damages. The United States could bring suit, but only if the buyer could not or did not. *See* Defense Production Act of 1950, § 409(c), Pub. L. No. 81-774, 64 Stat. 798, 811 (1950) (*Price*); Emergency Price Control Act of 1942, § 205(e), Pub. L. No. 77-421, 56 Stat. 23, 34 (*Porter*). The intention of these statutes was to benefit the buyers of price-controlled commodities and the harm the statutes sought to redress lay between private entities, not between a private entity and the United States. In *Price* and *Porter*, the "[g]overnment itself did not suffer a direct injury from the defendants' acts, rather the defendants' acts harmed the buyers, and therefore the statute was

not remedial." *United States v. Green*, 2020 WL 3451543, at *3 (S. D. Fla., June 9, 2020) citing to *Price*, 290 F.2d at 527; *Porter*, 163 F.2d at 215.[5]

> **B.    The purpose of the civil FBAR penalties is primarily remedial and compensates the government for harm**

In the absence of an expression of contrary intent, the survival of a federal cause of action is a question of federal common law.  *James v. Home Constr. Co. of Mobile*, 621 F.2d 727, 729 (5th Cir. 1980).   Under federal common law while remedial actions survive the death, penal actions do not.   *In re Wood*, 643 F.2d 188, 190 (5th Cir. 1980).   If a claim does not fall neatly within the penal or remedial categories, a court should determine whether the claim's serves a primarily remedial purpose. *United States v. Green*, 2020 WL 1980859,  *In re Wood*, 643 F.2d at 192, *Malvino v. Delluniversita*, 840 F.3d 223, 229- 230 (5th Cir. 2016)(Court recognized that "civil RICO is a square peg, and squeeze it as we may, it will never comfortably fit in the round holes of the remedy/penalty dichotomy," but the primary purpose of the RICO treble damages is remedial and survives death).

Here, the statute itself supports a finding that the civil FBAR penalties at issue are remedial in nature because within Title 31, the civil and criminal penalties related to the same conduct are broken into separate, clearly labeled sections.  31 U.S.C. § 5322(a) provides a statutory maximum of $250,000 in criminal fines and up to five years' imprisonment for each criminal violation of Section 5314.  *See also* 31 U.S.C. § 5322(b) (providing higher statutory maximums where the violation is part of a pattern of illegal activity).  Contrast 31 U.S.C.

---

[5] The court in *United States v. Green* specifically distinguished the *Price* and *Porter* cases. *United States v. Green*, 2020 WL 3451543, at *3-4 (denying defendant's motion for reconsideration).

§ 5321(a)(5) which provides civil penalties for violations of Section 5314, including non-willful

FBAR penalties requiring no scienter.

 Additionally, other tax penalties that serve a remedial purpose but also have penal affects

survive the death of the taxpayer.  For example, penalties for promoting abusive tax shelters

under 26 U.S.C. §§ 6700 and 6701 survived the taxpayer's death. *Reiserer v. United States*, 479

F.3d at 1162–64.  Tax fraud penalties are civil administrative sanctions of a remedial character in

aid of the assessment and collection of taxes, and they survive the death of the taxpayer. *Lee v.

C.I.R.*, 227 F.2d 181, 183 (5th Cir. 1956) citing to *Helvering v. Mitchell*, 303 U.S. 391, 401

(1938)( Court determined that civil tax penalties were remedial).  Similarly, civil penalties under

26 U.S.C § 6721 for failure to file an information returns were determined to be remedial rather

than punitive for double jeopardy purposes.  *Bickham Lincoln-Mercury Inc. v. U.S.*, 168 F.3d

790, 795 (5th Cir. 1999).[6]

 Likewise, the civil FBAR penalty serves an important remedial purpose.  It helps to

reimburse the United States for tax revenue lost through secret offshore financial accounts, as

well as the costs of investigating those accounts.  In 1970, Congress enacted the Bank Secrecy

Act, ("BSA"), to close "the largest single tax loophole permitted by American law," the secret

foreign bank account. H.R. Rep. 91-975 (1970) reprinted in 1970 U.S.C.C.A.N. 4394, 4398.

Congress found that undisclosed relationships with "secret foreign financial facilities,"

particularly those in Switzerland, facilitated a number of unsavory activities, including income

tax evasion, schemes to defraud the United States, and the illegal concealment of assets.  *Id*. at

4397-4398.   It has been estimated that hundreds of millions in tax revenues have been lost." *Id.*

---

[6] *See also Dewees v. United States*, 272 F. Supp. 3d 96, 100-101 (D. D.C. 2017) and *In re Wyly*,
552 B.R. 338, 612-13 (N.D. Tex. 2016), determining Title 26 information return penalties as
remedial for Eight Amendment purposes.

at 4397.  Cases involving offshore accounts can be "in the investigative stage for years," involving "a time consuming and off times fruitless foreign legal process." *Id.*

Congress reiterated those problems in 2004, when it increased the penalties for willful FBAR violations and added, for the first time, a penalty for non-willful failures to file. See American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 821, 118 Stat. 1418, 1586 (codified at 31 U.S.C. § 5321). The legislative history for the 2004 amendments explains that "the number of individuals involved in using offshore bank accounts to engage in abusive tax scams has grown significantly in recent years," and that improving FBAR compliance was "vitally important to sound tax administration." S. Rep. 108-192 (2003), at 108.  Thus, Congress added this non-willful variant of the penalty after receiving estimates that "hundreds of thousands of taxpayers with offshore bank accounts [were] attempting to conceal income from the IRS." S. Rep. 108-192 at *108.  Congress also relied in part on a report by the Secretary of the Treasury. *See id*. at 108 & n. 194. That report noted that obtaining information from foreign jurisdictions by treaty was not always possible—and when it was available, getting it "is often a cumbersome, time-consuming process." Treasury Department, Report to Congress in Accordance with § 361(b) of the USA PATRIOT Act of 2001, at 8 (Apr. 26, 2002). *See also id*. at 11 (noting that using administrative summonses to obtain information from certain tax haven jurisdictions "can be prohibitively difficult and time consuming").  Cumbersome, time consuming and difficult investigations increase the investigative costs to the United States.  In an effort to unearth such hidden accounts and relationships, the Treasury Secretary was authorized to assess a penalty "on any person who violates, or causes any violation of, any provision of [31 U.S.C.] section 5314." 31 U.S.C. § 5321(a)(5)(A).

11

The FBAR penalties serve the important remedial purpose of compensating the government for lost revenue as well as the costs of investigating foreign activity and seeking compliance with tax law. *See Estate of Schoenfeld*, 344 F. Supp.3d at 1374., *Green*, 2020 WL 1980859, *United States v. Schwarzbaum*, Case No. 18-cv-8114, 2020 WL 2526500, at *6-7 (S.D. Fla., 2020)( In Eight Amendment analysis the court determined that the FBAR penalties were not primarily punitive and that were more remedial to compensate the government for monetary harm). *See also United States v. Garrity*, No. 3:15-cv-243(MPS), 2019 WL 1004584, at *8-*9 (D. Conn. Feb. 28, 2019) (rejecting argument that government was not harmed by FBAR violations).

Here, the government relies on the general remedial nature of the FBAR penalties as shown through legislative history, congressional statements and case law, and it need not show that the specific penalties assessed against Jagmail Gill in this case tie directly to a specific tax loss, injury or damages to the government.  However, in the present case, there was injury to the government from the failure to report foreign accounts, keeping the U.S. in the dark about the funds and income associated with those accounts, ultimately requiring that a complete examination and deficiency determination of unpaid income taxes to be undertaken for several years.  Jagmail Gill had numerous foreign accounts and foreign income that were not reported on his original 2005-2010 U.S. tax returns.  Although the Response contends Jagmail Gill filed amended returns and subsequently signed up for a voluntary disclosure program, it also admits that the withdrew from that program and the IRS eventually had to complete an examination and propose a deficiency on his income taxes for the 2006-2010 years. Additionally, it was determined that Jagmail Gill had tax deficiencies for several years prior to 2005 that were unable to be assessed and collected due to the statute of limitations.  It is clear Jagmail Gill's failure to

report his foreign accounts on his original tax returns and on the FBAR forms injured the United States both in unpaid taxes and resources required to conduct the necessary examination.

Furthermore, the difference in the amount of the FBAR assessments made against Jagmail Gill versus those made against Amarjit Gill does not indicate that the government was not harmed or that the assessments were out of line.  The is no absurd disparity between the defendants in this case as Jagmail Gill failed to disclose some 119 foreign accounts versus Amarjit Gill' 15 foreign accounts over a six-year period set forth as follows:

| Year | Total Number Jagmail Gills' Foreign Accounts | Total Number of Amarjit Gills Foreign Accounts |
|---|---|---|
| 2005 | 15 | 2 |
| 2006 | 17 | 2 |
| 2007 | 18 | 3 |
| 2008 | 22 | 4 |
| 2009 | 22 | 2 |
| 2010 | 25 | 2 |
| Total | 119 | 15 |

## V.    Conclusion

For the foregoing reasons, the unauthorized Response should be stricken, and to the extent not stricken the request in the Response to dismiss the United States' claims against Jagmail Gill under 31 U.S.C. § 5321(a)(5) should be denied because those claims are remedial in nature and survive his death.  Additionally, the Court should appoint a personal representative for the Estate of Jagmail S. Gill for the limited purpose of defending this suit and to substitute such appointed person under Rule 25 for the now deceased Jagmail Gill.

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

/s/ Herbert W. Linder
HERBERT W. LINDER
Ohio Bar No. 0065446
Attorney, Tax Division
Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9754
(214) 880-9741 (facsimile)
Herbert.W.Linder@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

### CERTIFICATE OF SERVICE

I certify that on August 18, 2020, notice of filing of this document was made by delivery of the notice of electronic filing that is automatically generated by ECF on the following registered ECF users pursuant to Local Rule 5.1(d):

Nicole M. Elliott
HOLLAND & KNIGHT
800 17th Street NW, NW, Suite 1100
Washington, D.C. 20006

Joshua D. Smeltzer, Esq.
Brown Fox, PLLC
8111 Preston Road, Suite 300
Dallas, TX 75225

/s/Herbert W. Linder
HERBERT W. LINDER