UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
|     Plaintiff, § | | |
| § | Case No. 4:18-cv-04020 | |
| vs. § | Case No. 4:18-cv-04032 | |
| § | (Consolidated) | |
| JAGMAIL S. GILL, ET AL., § | | |
|     Defendants. § | | |

## MOTION TO DISMISS AND BRIEF IN SUPPORT

The Representative of the Estate of Defendant Jagmail S. Gill (Amarjit Kaur Gill) hereby moves to dismiss the claims against Jagmail S. Gill, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. The Supreme Court has held that an action against a deceased party cannot continue unless it "is one that survives by law."[1] The FBAR penalties at issue, assessed against Defendant Jagmail S. Gill, do not survive his death as a matter of law because they are penal and not remedial. Therefore, the claims against Defendant Jagmail S. Gill should be dismissed.

### INTRODUCTION AND BACKGROUND

Mr. Gill died on April 2, 2020, suspected from COVID-19. As background, Mr. Gill was born in India and resided in the United Kingdom until his passing on April 2, 2020. Amarjit Kaur Gill (Mrs. Gill) was also born in India and lived in the United Kingdom since 1960 when she moved from India to marry Mr. Gill. Both Mr. and Mrs. Gill (the "Taxpayers") were aware of and filed U.S. Individual Income Tax Returns (Forms 1040 and 1040-A) for the years 2005 through 2010. In preparing these returns, the Taxpayers' sought the assistance of two CPAs – their son, Jagjit Gill ("Jag") and Marc Graye ("Graye").[2] Although both Jag and Graye were aware that the

---

[1] *Ex parte Schreiber*, 110 U.S. 76, 80 (1884).
[2] Jag prepared the Taxpayers' income tax returns for 2005-2009 and Graye prepared the income tax return for 2010.

Taxpayers lived abroad and had foreign assets they also believed that only U.S. sourced income (that derived from inside the United States) needed to be reported on the income tax returns. When the need to report worldwide income was discovered, the Taxpayers voluntarily entered into the Internal Revenue Service's ("IRS") 2011 Offshore Voluntary Disclosure Initiative ("OVDI") and amended and filed the income tax returns and the necessary FBARs.[3] Taxpayers voluntarily paid their adjusted outstanding tax liability, as asserted by the IRS, despite questions about the accuracy of the asserted amount. Disagreement with the automatic amount of FBAR penalties assessed through OVDI caused the Taxpayers – like many during this time – to withdraw from OVDI. As a consequence, the IRS conducted a full FBAR examination of Taxpayers, the result of which ended in an assessment of non-willful FBAR penalties against the Taxpayers individually.

Once the Taxpayers discussed the assessment with suitable legal counsel, they attempted to file a post-assessment appeal of the FBAR penalties according to rights outlined in IRS correspondence sent to the Taxpayers and the IRS' Internal Revenue Manual. Unfortunately, these attempts were unsuccessful, and the IRS did not provide the promised right to a post-assessment administrative appeal. The Taxpayer Advocate Service ("TAS") also planned to issue a Taxpayer Assistance Order but referral was made to the U.S. Department of Justice before such assistance could be provided. As a result, the United States filed suits against both Mr. and Mrs. Gill to reduce the FBAR penalties to judgment and collect on such judgments.

**ARGUMENT**

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Claims may be dismissed under Rule 12(b)(6) "on

---

Graye is currently deceased.

[3] Taxpayers amended joint income tax returns were filed on Forms 1040X when they should have been Forms 1040NR attaching Forms 8833 to claim the treaty benefits. These returns were prepared by Pannell Kerr Forster of Texas, P.C.

the basis of a dispositive issue of law."[4] The Supreme Court has held that an action against a deceased party cannot continue unless it "is one that survives by law."[5] Since Congress has not specifically expressed its intention on whether FBAR penalties survive death, the court must rely on federal common law.[6] In the Fifth Circuit, survivability of a federal statute turns on whether the "primary purpose" of the statute is remedial or penal.[7] If the statute's primary purpose is remedial it survives death and, if the primary purpose is penal, it does not.

The Fifth Circuit only considers a statute remedial if it redresses individual wrongs, the recovery runs to the harmed individual, and the statutory recovery is proportional to the harm suffered.[8] In contrast, a statute is penal if its primary purpose is redress and deterrence of general wrongs to the public, the recovery runs to the public, and the recovery is wholly disproportionate to the actual harm suffered.[9] Application of these factors to the non-willful FBAR penalty involved shows that the primary purpose, and arguably its only purpose, is penal and therefor does not survive the death of Defendant Jagmail S. Gill.

A. ***The primary purpose of the FBAR penalty is to redress and deter general wrongs to the public and not individual wrongs***.

Several courts acknowledge that federal statutes may have both penal and remedial purposes.[10] The relevant question is not if there is "any" remedial purpose served but what is the

---

[4] *Walker v. Beaumont Independent School District*, 938 F.3d 724, 734 (5th Cir. 2019)(citing *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)).
[5] *Ex parte Schreiber*, 110 U.S. 76, 80 (1884).
[6] *James v. Home Const. Co. of Mobile, Inc.*, 621 F.2d 727, 729 (5th Cir. 1980).
[7] *See In re Wood*, 643 F.2d 188, 192 (5th Cir. 1980)(citing *Schreiber*, 110 U.S. at 80); *James*, 621 F.2d at 730(citing *Schreiber*); *see also, Malvino v. Delluniversita*, 840 F.3d 223, 229 (5th Cir. 2016).
[8] *Malvino*, 840 F.3d at 229 (quoting *Murphy v. Household Fin. Corp.*, 560 F.2d 206, 209 (6th Cir. 1977)); *James*, 621 F.2d at 730.
[9] *Id*.
[10] *See e.g. Irvin-Jones v. Equifax Information Services LLC*, 2019 WL 4394684, *15 (S.D. Tex. 2019).

primary purpose served through a statute.[11] More specifically, the Supreme Court has held that even if the action serves some remedial purpose, as long as there is also a retributive or deterrent purpose – it is punitive.[12] The government's own Internal Revenue Manual acknowledges that the primary "purpose of the [FBAR] penalty is to promote compliance with FBAR reporting and recordkeeping requirements."[13] Therefore, the penalties at issue are used to redress the general public wrong of improper reporting of foreign accounts. This is in contrast to traditional remedial actions that compensate individuals for a specific harm and not "a general wrong to the public."[14]

Counsel has not found a Fifth Circuit case specifically addressing the consequences of death on the non-willful FBAR penalties at issue in this case. A few district courts, in non-binding circuits, have found the willful variant of the FBAR penalty survives death.[15] However, at least one other court has indicated that failure to file an FBAR is "a wrong to the state" resulting in "no injured private party and no pecuniary harm" and assessed "as a punishment" as opposed to "any sort of compensation."[16] This decision considered the specific attributes of the FBAR penalty and found it deserving of a solely penal designation. Even assuming that some portion of the FBAR penalty is arguably remedial, the primary purpose is what matters to the determination and is clearly penal.

---

[11] *In re Wood*, 643 F.2d 188 (5th Cir. 1980)(stating that if a claim "does not fall neatly within the common law categories of either a penalty or remedial action" courts should determine the claim's "primary purpose."); *see also, Bradley v. Franklin Collection Servcs. Inc.*, 2012 WL 12895015, at *4–5 (N.D. Ala. Apr. 10, 2012) (conducting survivability analysis and looking to the claim's "primary purpose").
[12] *See United States v. Bajakajian*, 524 U.S. 321 (1998)("unless a civil sanction solely serves remedial purposes, it may be considered punishment"); *Austin v. United States*, 509 U.S. 602, 610 (1993); *See also United States v. Levine*, 905 F. Supp. 1025, 1029 (M.D. Fla. 1995) (citing *United States v. Halper*, 490 U.S. 435, 448 (1989) for proposition that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." (emphasis added)).
[13] Internal Revenue Manual 4.26.16.6.4.
[14] *See United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993).
[15] *See e.g., United States v. Estate of Schoenfeld*, 344 F. Supp. 3d 1354 (M.D. Fla. 2018).
[16] *See United States v. Simonelli*, 614 F. Supp. 2d 241, 247 (Dist. Conn. 2008).

The handful of non-binding jurisdictions, allowing willful FBAR penalties to survive death, apply a standard that completely overlooks the core question of whether the FBAR penalty is remedial or penal.[17] Specifically, these courts focused on a standard outlined in *U.S. v. Hudson*, that relates to whether a civil penalty was so punitive as to transform it into a criminal penalty, such that a criminal prosecution would be barred under double jeopardy principles.[18] Therefore, the non-binding cases are not even persuasive authority because they fail to answer the core question this court must decide. Does the non-willful FBAR penalty at issue serve a primarily penal or primarily remedial purpose?

The United States' complaint refers to a civil "penalty" throughout the allegations and in its demand for judgment.[19] Further, as noted above, the Internal Revenue Manual provisions, discussing the non-willful violations at issue, states that the liability is not based on an actual harm caused but instead serves a typical penal purpose – deterrence.[20] In fact, there is no individual wrong that can conceivably be attached to the non-willful FBAR penalties at issue because it merely punishes taxpayers for failure to provide information requested by the government. This is why at least one court has recognized the "FBAR penalty is assessed on Defendant as punishment, not as any sort of compensation for any pecuniary harm."[21] Therefore, this first factor weighs in

---

[17] *See Estate of Schoenfeld*, 344 F. Supp. 3d 1354 (M.D. Fla. 2018)( using *Hudson v. United States*, 522 U.S. 93 (1997) to determine whether a nominally civil penalty is punitive enough to transform a civil remedy into a criminal penalty); *United States v. Park*, 389 F. Supp. 3d 561 (N.D. Ill. 2019)(applying similar incorrect analysis); *see also, United States v. Green*, 2020 WL 1980859, *5 and 7 (S.D. Fla. 2020)(finding the FBAR penalty survives death despite being "the proverbial square peg in the round hole" but acknowledging Hudson as persuasive to its decision).
[18] *See Hudson v. United States*, 522 U.S. 93, 99 (1997)(holding that "the Double Jeopardy Clause of the Fifth Amendment is not a bar to the later criminal prosecution because the administrative proceedings were civil, not criminal").
[19] *See* ECF #1 (U.S. Compl.) at ¶¶ 1, 39-44; Although FBAR penalties are "civil penalties", it is well established that even clearly civil penalties abate upon death. *See, e.g., United States v. Edwards*, 667 F. Supp. 1204, 1215 (W.D. Tenn. 1987)(holding that an EPA Clean Water Act Penalty is a "civil penalty" that abates upon death because it "was intended by Congress as a means to deter people from violating the Act).
[20] *See* Internal Revenue Manual 4.26.16.6.4 ("purpose of the [FBAR] penalty is to promote compliance with FBAR reporting and recordkeeping requirements")s
[21] *See Simonelli*, 614 F. Supp. 2d at 247.

MOTION TO DISMISS AND BRIEF IN SUPPORT - Page 5
4840-9637-6542.1

favor of finding that the non-willful FBAR penalty is penal and is extinguished upon the death of the defendant.

B. *FBAR penalties provide a recovery to the public and are not individual restitution*.

FBAR penalties are paid to the United States Treasury and not to any individual as any kind of restitution. Section 31 U.S.C. § 5324 requires reporting of certain foreign accounts exceeding $10,000 by filing Form TD F 90-22.1 (commonly known as an "FBAR") regardless of whether it would result in taxes due and owing. As such, the FBAR penalty applies even when every dollar of tax on income in any undisclosed account is paid. Therefore, the FBAR penalty does not compensate the United States for any harm suffered as a result of the defendant's actions, such as other federal statutes like the False Claims Act ("FCA"), because no harm is required. The FBAR violation merely deprives the Government's Financial Crimes Enforcement Network ("FinCEN") of information it collects in its public capacity.[22] The United States essentially acknowledges this fact in the complaint when it says the "civil penalties" are assessed for failure "to comply with reporting requirements" about the existence of accounts.[23]

Therefore, any potential harm to the United States is hypothetical at best. Such hypothetical harm would rely on an indirect claim of general governmental costs, applicable to any penalty, which would make the need for a remedial or penal determination superfluous. Such a result is contrary to the law specifically requiring the court to consider the primary purpose and determine if a statute is primarily penal or remedial. A remedial finding requires a "direct injury" to the United States or "the action is not for compensation but for the recovery of a penalty, and abates

---

[22] Internal Revenue Manual § 4.26.16.6.4 (stating that FBAR penalties "promote compliance with the FBAR reporting and recordkeeping requirements").
[23] *See* ECF #1 (U.S. Compl.) at ¶39.

MOTION TO DISMISS AND BRIEF IN SUPPORT - Page 6
4840-9637-6542.1

upon death of the defendant."[24] Therefore, the second factor also weighs in favor of finding that the FBAR penalty is penal and is extinguished upon the death of the defendant.

    C. ***FBAR penalties are disproportionate to any alleged harm suffered***.

The third, and final, factor also supports the conclusion that the FBAR penalty abates upon death. Especially given the fact that the United States acknowledges that the FBAR penalties involved are non-willful penalties.[25]

The FBAR penalty is not part of the Internal Revenue Code. Rather, it is part of the Bank Secrecy Act. As outlined above, it is not designed to compensate for a direct loss by the United States in terms of lost taxes. Instead, it is designed to incentivize compliance with the FBAR's filing requirements by imposing a penalty for non-reporting. In 2004, Congress added non-willful penalties and greatly increased the FBAR willful penalty to the greater of $100,000 or 50% of the balance in the account.[26] The IRS's assessment of non-willful and willful penalties is discretionary and, in several cases, the results are multi-million dollar penalties against both willful and non-willful taxpayers.[27] Regardless, the application and calculation of non-willful or willful FBAR penalties bears no relationship to taxes ultimately owed.

The maximum penalty for non-willful violations is $10,000.[28] However, even when the conduct is admittedly non-willful, as here, the FBAR penalties can be substantial and completely

---

[24] *United States v. Price*, 290 F.2d 525, (6th Cir. 1961); *see also, Porter v. Montgomery*, 163 F.2d 211, 215 (3d Cir. 1947)("In order to obtain damages, the loss must flow out of the wrong and be its natural and proximate consequence").
[25] *See* ECF #1 (U.S. Compl.) at ¶¶33 and 40.
[26] American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418 (codified at 31 U.S.C. § 5321).
[27] The provisions outlining IRS discretion to assess FBAR penalties are contained in Internal Revenue Manual 4.26.16.6.5. Cases involving millions of dollars in penalties are common. *See e.g. United States v. Schwarzbaum*, 2020 WL 1316232, *13 (S.D. Fla. 2020)(noting a $13,729,591 FBAR penalty assessed by the IRS that was improperly calculated by the examiner); *United States v. Bittner*, 469 F. Supp. 3d 709, 715, 726 (E.D. Tex. 2020)(reducing an alleged $2.7 Million non-willful penalty to $10,000 per missing FBAR for 2007 through 2011 tax years).
[28] 31 U.S.C. §5321(a)(5)(B)(i); *see also*, ECF #1 (U.S. Compl.) at ¶39.

disproportionate to any alleged harm. Although the determination of a claim's survivability upon death requires a look to the nature of the statute instead of specific conduct,[29] the Taxpayers' situation provides an example of the absurd disparity that can occur with non-willful FBAR penalties. Mr. and Mrs. Gill are both assessed for failing to file the required FBAR forms for 2005 through 2010, based on their tax advisor's misunderstanding of the law. The failure to file the form is what triggers the penalty. However, because Mr. Gill is an alleged signatory on more accounts his penalty is $784,608.78 instead of $55,304.55 assessed against Mrs. Gill for failing to file the same FBAR form for the same tax years.[30] This disparity results from the discretion given to IRS examiners to assess no penalty, a maximum penalty of $10,000 per year or, instead, penalties for each account per year.[31] This alleged discretion allows the IRS to use the statute to assess large penalties completely disproportionate to any harm suffered for the agreed non-willful conduct.

Two recent decisions by courts in Texas and Connecticut acknowledge the excessive nature of the non-willful penalties asserted on a per-account basis – as asserted in this case.[32] In *United States v. Bittner*, the Eastern District of Texas rejected the same per-account assessments for non-willful FBAR penalties the government asserts here.[33] The *Bittner* court, analyzing the non-willful FBAR penalty statute, noted that rejecting the United States' arguments for per account penalties avoided "absurd outcomes that Congress could not have intended in drafting the statute."[34] The absurd outcomes outlined by the *Bittner* court include assessing two taxpayers with $1 Million

---

[29] *See In re Wood*, 643 F.2d at 190 ("It has long been established that *causes of action predicated on penal statutes* do not survive the death of the debtor…"(emphasis added)).
[30] Amounts are only calculated through September 1, 2017 and the current amounts owed are likely higher because of interest and any other additions that may be claimed by the United States. (*See* ECF #1 at 12.)
[31] *See* Internal Revenue Manual 4.26.16.6.4.1 (indicating that "in most cases" examiners will recommend on penalty per open year but can assert a separate penalty for each unreported account).
[32] *See United States v. Bittner*, 469 F. Supp. 3d 709 (E.D. Tex. 2020); *United States v. Kaufman*, 2021 WL 83478 (D. Conn. 2021).
[33] *See Bittner*, 469 F.Supp. 3d at 726.
[34] *Bittner*, 469 F. Supp. 3d at 721.

balances $20,000 and $200,000 penalties merely because the aggregate balance involves more accounts.[35] The *Bittner* court also recognizes that, in some cases, a willful violator could pay less than a non-willful violator if the interpretation the United States requests is allowed.[36] The court in *United States v. Kaufman*, citing *Bittner*, also acknowledges that the Government's application of the penalty "could readily result in disparate outcomes among similarly situated people" and "more troubling…that under some circumstances, a non-willful violation could be exposed to a significantly higher penalty than a willful violator."[37] A penalty, willful or non-willful, unconnected to any loss of actual tax revenue is arguably disproportionate to any actual harm suffered on its own. However, considering the Government's application in the non-willful context, allows for disproportionate harm between willful and non-willful taxpayers and even similarly situated non-willful taxpayers.

    The *Bittner* court also noted that "willful violators pose a fundamentally different obstacle to the Government's ability to monitor foreign financial transactions than non-willful violators" in response to the government's arguments that investigatory costs justify the high penalties.[38] Although the court recognized the concern, it indicated that it "does not see any connection between the number of foreign financial accounts unreported and lost tax revenue."[39] As noted above, there is no connection to a specific harm to the United States tax revenue. Any general harm is applicable to any penalty investigation and not a justification for labeling the statute remedial and applying a penalty disproportionate to the alleged harm caused.

---

[35] *Id*.
[36] *Id*. at 722.
[37] *Kaufman*, 2021 WL 83478 at *10.
[38] *See Bittner*, 469 F. Supp. 3d at 721.
[39] *See id.*

MOTION TO DISMISS AND BRIEF IN SUPPORT  -  Page 9
4840-9637-6542.1

The FBAR penalties, both willful and non-willful, are calculated and applied without any relationship to lost tax revenue and are wholly disproportionate to any indirect harm allegedly caused. Therefore, the third factor also weighs in favor of finding that the FBAR penalty is penal and extinguished upon the death of the defendant.

## CONCLUSION

For the foregoing reasons, the FBAR penalty claims against Mr. Gill do not survive his death and, as such, the United States' complaint against Defendant Jagmail S. Gill fails to state a claim upon which relief can by granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

DATE: March 15, 2021                                GRAY REED & McGRAW, LLP


By:   */s/ Joshua Smeltzer*
      JOSHUA D. SMELTZER
      (Attorney in Charge)
      Texas Bar No. 24113859
      S.D. Texas No. 351059
      DAVID C. GAIR
      Texas Bar No. 24059792
      1601 Elm Street, Suite 4600
      Dallas, Texas 75201
      Telephone: (214) 954-4135
      Facsimile: (214) 953-1332
      Email: jsmeltzer@grayreed.com
             dgair@grayreed.com

      ATTORNEY FOR AMARJIT KAUR GILL
      AS REPRESENTATIVE FOR THE
      ESTATE OF JAGMAIL S. GILL

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served on this day on counsel identified on the Service List below via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

>Herbert W. Linder, Esq.
>Department of Justice
>717 N. Harwood, Suite 400
>Dallas, Texas 75201
>Telephone: 214.880.9754
>Facsimile: 214.880.9774
>Email: Herbert.W.Linder@usdoj.gov

>*/s/ Joshua D. Smeltzer*
>JOSHUA D. SMELTZER